UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROL PERLMAN,

                                        Plaintiff,

                    -v-

GENERAL ELECTRIC, GE HEALTHCARE, H.
LAWRENCE CULP, JR., PETER ARDUINI, FRANK
JIMENEZ, BETTY LARSON, *and* JOHN DOES 1-10,

                                        Defendants.

---

22 Civ. 9823 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Carol Perlman ("Perlman") brings claims against her former employer, a related corporate entity, and individual managers for violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and New York[1] state common law. She claims that General Electric Company ("GE"); GE Healthcare; H. Lawrence Culp, Jr., GE's chief executive officer and chairman; Peter Arduini, GE Healthcare's chief executive officer and president; Frank Jimenez, GE Healthcare's general counsel; and Betty Larson, GE Healthcare's chief people officer (collectively, "defendants") failed to provide her with plan documentation owed her under ERISA and wrongly denied her claims for benefits under the GE Healthcare Pension Plan.

---

[1] Although the Complaint does not specify the state whose common law is at issue, the parties have exclusively briefed the pending motions with reference to New York law. Where "[t]he parties' briefs assume that New York substantive law governs the issues presented, . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). The Court "follow[s] their lead" and applies New York law to the common law claims. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

From 1994 to 2003, Perlman worked as vice president of corporate communications for a

series of medical imaging companies that underwent sequential mergers and buyouts.  During

this period, she was a U.S. employee with significant employment duties in the U.K.  The last of

these employers, Amersham Health, Inc. ("Amersham"), was ultimately acquired by GE in a

deal announced in 2003, and folded into GE Healthcare.  Perlman alleges that, after she learned

that the corporate acquisition would eliminate her position, an Amersham human resources

representative told her that U.S.–based human resources personnel would discuss "next steps"

with her when she returned to the United States.  Perlman claims, however, that she was never

advised of her retirement or pension benefits during or after the 2003 elimination of her post.

Based on this lapse, Perlman seeks, *inter alia*, an order that defendants pay out the pension and

other compensation, including equity options, that she claims she was promised during her

employment but which she never received.

Defendants now move to dismiss all counts, most on account of untimeliness.  For the

following reasons, the Court grants defendants' motion in its entirety.

## I.    Background

### A.    Factual Background[2]

In 1994, Perlman joined Norwegian firm Nycomed Inc. and Nycomed Imaging, Inc., two

predecessor companies to GE Healthcare, as vice president for corporate communications and

---

[2] The following facts are drawn primarily from the Complaint, Dkt. 1 ("Compl."), and the
exhibits incorporated therein. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir.
2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),
a district court may consider the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference in the complaint.").

For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all
well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v.
Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Nat. Res. Def. Council v. Johnson*, 461
F.3d 164, 171 (2d Cir. 2006).

public affairs. Compl. ¶¶ 26–27. Perlman managed internal and external communications for the business, which sought to establish itself as a global leader in diagnostic imaging. *Id.*

Between 1996 and 2001, Perlman served as vice president of corporate communications and public affairs for Nycomed Amersham Imaging, another of GE Healthcare's predecessor companies. *Id.* ¶ 29.

Between 2001 and 2003, Perlman served as vice president of corporate communications and reported directly to Dr. John Padfield, the chief executive officer of Amersham Health;[3] Perlman continued in this role until GE announced its purchase of Amersham in 2003. Dkt. 27 ("Perlman Decl.") ¶ 3; Compl. ¶¶ 30, 36–37. In late 2003, when GE Healthcare subsumed Amersham, Perlman's position was eliminated, although she was immediately rehired as a "contractor." Compl. ¶ 33. Perlman alleges that, under GE Healthcare's redundancy and severance programs, she should have been advised as to the status of her entitlements under her pension, benefits, stock plans, and other compensation under GE Healthcare's extant policies and procedures, but was never so advised. *Id.*

In late 2003, Perlman—while in a meeting in the United Kingdom with Caroline Luscombe ("Luscombe"), then–executive vice president of human resources at GE Healthcare— learned that her position would be eliminated. *See id.* ¶¶ 38, 45; *see also* Dkt. 28 ("Luscombe Decl.") ¶ 3; Perlman Decl. ¶ 10. Luscombe told Perlman that because Perlman was a U.S. employee whose duties entailed regular work in the U.K., her severance, treatment of options, and pension would be governed by the U.S. severance policy and handled by company representatives in the U.S. *See* Compl. ¶ 38; *see also* Luscombe Decl. ¶ 3 ("My instruction to

---

[3] Neither the Complaint nor Perlman's declaration say where she worked between 2001 and 2003. The pending motion to dismiss does not turn, however, on whether Perlman was employed by Amersham Health or Nycomed Amersham Imaging during this period.

her at the time was that U.S. Human Resources would discuss 'next steps' with her on her return to the United States."). As a result, there was no discussion at this meeting about Perlman's entitlement to these U.S. benefits. *See* Compl. ¶ 38; *see also* Luscombe Decl. ¶ 3. And U.S. human resources never advised Perlman as to her entitlement to benefits. *See* Compl. ¶¶ 33, 38; Perlman Decl. ¶¶ 16, 17 ("[M]y entitlement to Benefits was never explained to me either in person or in writing and said Benefits were never at any time provided to me.").

Between late 2003 and December 2004, Perlman served as a contractor for GE Healthcare with primarily the same duties. *See* Compl. ¶ 33; *see also* Perlman Decl. ¶ 10.

Many years later, in March 2020, Perlman spoke by phone with a former GE Healthcare colleague, who informed her that she might be entitled to a pension from GE Healthcare based on her employment between 1994 and 2003. Compl. ¶¶ 38, 57; *see also* Perlman Decl. ¶ 11. That call first alerted Perlman to the possibility that she might be entitled to a company pension. Compl. ¶ 57; *see also* Perlman Decl. ¶ 11.

On June 19, 2020, Perlman phoned the GE Healthcare Affiliate Plan in the U.S. Compl. ¶ 58; *see also* Perlman Decl. ¶ 12. An unidentified plan representative told Perlman that she was entitled to a pension and would mail her "information that she had to fill out and return." Compl. ¶ 58; *see also* Perlman Decl. ¶ 12. Perlman never received such a mailing. Compl. ¶ 58; *see also* Perlman Decl. ¶ 12. At a later, unspecified point, Perlman called back and was told that the first employee to whom she had spoken no longer worked there; that the vesting period for her pension had been three years; and "by their calculation certain months seemed to be missing." Compl. ¶ 58; *see also* Perlman Decl. ¶¶ 12–13. At a later, unspecified point, Perlman called again, and was told the vesting period had actually been five years, and that there was nothing the GE Healthcare Affiliate Plan could do to help her barring some "special arrangement."

4

Compl. ¶ 58; Perlman Decl. ¶ 13. Perlman told the representative that "all of [her] information" should be in her personnel file and that she wished to receive that file. Perlman Decl. ¶ 13. Despite her requests, however, Perlman never received a copy of her personnel file either from the plan or GE Healthcare. Compl. ¶ 60.

The Complaint claims that Perlman is also entitled to the full value of equity options "award[ed]" to her as documented in correspondence in 2001 and 2002 with Sir William Castell, the chief executive of Nycomed Amersham. *Id.* ¶¶ 49–50. It alleges that, as reflected in the 2001 correspondence, Perlman is owed 23,852 shares at a strike price of £5.60 per share, totaling £133,571.20; and that as reflected in the 2002 correspondence, she is owed 18,556 shares at a strike price of £7.15 per share, totaling £266,246.60. *Id.* ¶ 51.

Perlman's Complaint alleges that her claims—even though arising from events two decades ago—are timely because "[t]he running of any [s]tatute of [l]imitations has been tolled by reason of [d]efendants' negligent misrepresentation and/or fraudulent concealment." *Id.* ¶ 53. This misconduct included "affirmative misrepresentations and omissions" to "actively conceal[] from Perlman that she was entitled to benefits and stock options." *Id.* The Complaint states that the "concealment of material information regarding her entitlement to benefits . . . was done with the intent to mislead [Perlman] and other similarly situated employees." *Id.* at ¶¶ 101–02.

### B. Procedural History

On November 17, 2022, Perlman filed the Complaint, which brings nine claims. *See* Dkt. 1. Three are under ERISA and seek (1) documents Perlman requested but did not received, (2) benefits under the pension plan, and (3) damages arising from defendants' alleged breach of fiduciary duty. Five are under common law: for (4) breach of fiduciary duty, (5) *quantum meruit* and unjust enrichment, (6) breach of the duty of the covenant of good faith and fair dealing, (7) promissory estoppel, and (8) negligent misrepresentation. *Id.* ¶¶ 62–99. The ninth, for

fraudulent concealment, seeks to toll the running of the statutes of limitations for the other common law claims. *Id.* ¶ 102.

On February 21, 2023, defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the nine claims do not state a claim, including because they are time barred and/or preempted by ERISA. Dkt. 18; *see* Dkt. 19 ("Def. MTD").  On April 17, 2023, Perlman opposed the motion. Dkt. 26 ("Opp."); *see* Dkts. 27–32 (supporting declarations). On May 12, 2023, defendants replied. Dkt. 34.

## II.  Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145; *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

6

### III.    Discussion

#### A.    Statute of Limitations

Defendants argue that Counts Two through Eight—all but Count One, claiming a failure

to provide documents in violation of ERISA, and Count Nine, claiming fraudulent concealment

—are untimely and that equitable tolling (for the common law counts) and ERISA's statutory

equivalent doctrine are unavailable to rescue them.  The Court agrees, first finding each count

untimely absent equitable or other tolling, and second finding no basis for tolling.

#### 1.    ERISA Claim for Benefits (Count Two)

Under § 502(a)(1)(B) of ERISA, a participant in an employee benefit plan governed by

ERISA may bring a lawsuit "to recover benefits due to [him or her] under the terms of [his or

her] plan, to enforce [his or her] rights under the terms of the plan, or to clarify [his or her] rights

to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Count Two claims

that Perlman is entitled to unpaid benefits and declaratory relief.  Compl. ¶ 70.

The parties agree that, because ERISA does not prescribe a limitations period for a claim

to benefits under § 502(a)(1)(B), the governing limitations period is supplied by the most nearly

analogous state statute of limitations.  29 U.S.C. § 1132(a)(1)(B); *see Heimeshoff v. Harford Life

& Acc. Ins.*, 571 U.S. 99, 104 (2013).  They also agree that, in New York, that term is six years.

*Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593,

598 (2d Cir. 1983) (applying New York's six-year statute of limitations, applicable to written

contracts, to an ERISA § 502(a)(1)(B) claim).

A claim arises—and the six-year period therefore begins—when there is a "clear

repudiation by the plan that is known, *or should be known*, to the plaintiff regardless of whether

the plaintiff has filed a formal application for benefits."  *Carey v. Int'l Bhd. of Elec. Workers

Loc. 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999) (emphasis added).  Defendants here seize

7

on the term "should be known." Def. MTD at 6.[4]  Perlman, they argue, should have known that

her benefit plans were being repudiated in 2003 when her job was eliminated, and she was

rehired as a contractor.  On that premise, any claim for wrongful denial of benefits was required

to have been brought within six years of Perlman's termination date, meaning at some point in

2009.  Perlman counters that she did not appreciate how her termination as an employee and her

reemployment as a contractor would impact her right to those benefits and that she had never

been told she had a right to a pension.  And, she notes, because no other major changes attended

her switch to a contractor role, she did not then appreciate that her benefits were being

repudiated.  In her analysis, the limitations period did not begin to run until March 2020, when,

she alleges, she stumbled upon knowledge of her earlier entitlement to a pension through a

conversation with a former coworker.

     The leading cases overwhelmingly support defendants.  This case law has "found a

plaintiff to be aware of his or her misclassification and exclusion from an employee benefit plan

in the absence of an explicit agreement or notification of the specific details of the plan."

*Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*, No. 10 Civ. 9613 (RA), 2013 WL

4860119, at *4 (S.D.N.Y. Sept. 11, 2013).  Therefore, a plaintiff knows, or should know, that her

reclassification may work an exclusion from an employee benefits plan, even without "an

explicit agreement or notification of the specific details of the plan."  *Id.*  In *Reches v. Morgan

Stanley & Co. Inc.*, for example, the Second Circuit noted that a "[p]laintiff's claims accrue[]

when he learn[s] that he [is] being classified as a leased employee or independent contractor,

because that information constituted notice that the [d]efendant ha[s] repudiated the [p]laintiff's

---

[4] Perlman's brief also quotes from *Carey*, but it unhelpfully omits, using ellipses, the critical
phrase in the middle, "or should be known."  *See* Opp. at 11.

eligibility for employee benefits, including pension and stock option benefits." 687 F. App'x 49 (2d Cir. 2017) (summary order); *see also Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (holding that, when plaintiffs were taken off their employers' payrolls and reclassified as "independent contractors," "the repudiation, which is the basis for this lawsuit, was known, or, at a minimum, should have been known to plaintiffs" notwithstanding plaintiffs' claim that, in actuality, "they did not understand that their benefits would, as a result be denied").

That doctrine defeats Perlman's claim here, in that her Complaint states that Perlman's employee position was "eliminated" in 2003, and that Perlman was immediately rehired as a "contractor" the same year. Compl. ¶ 33. The Complaint indicates that Perlman knew of these changes; it does not allege that Perlman was unaware in real time of the elimination of her employee post and her switch to a contractor post. It thus makes clear that Perlman was well aware of a significant change to her employment status in 2003 and that—whether or not she actually knew it—she *should have* known of the consequent change to her employee benefits by virtue of losing her employee status. Perlman's claim for benefits under § 502(a)(1)(B) of ERISA thus accrued in 2003, and the statute of limitations for her § 502(a)(1)(B) ERISA claim expired in 2009, more than a decade before she filed this suit.[5]

---

[5] Perlman's alternative argument, that she in fact remained an employee of GE Healthcare in 2004 notwithstanding her inaccurate designation in 2003 as a contractor, does not assist her. Where a person claims that she was misclassified, the repudiation triggering the running of the limitations period occurs "when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits." *Brennan v. Metro. Life Ins.*, 275 F. Supp. 2d 406, 409–10 (S.D.N.Y. 2003). In any event, even if the limitations period began to run in 2004, it expired in late 2010, some 12 years before Perlman brought this lawsuit.

### 2.    ERISA Claim for Breach of Fiduciary Duty (Count Three)

Count Three alleges that defendants breached their fiduciary duties, in violation of

§§ 404(a)(1)(A), (D), 409(a) and 502(a)(2) of ERISA, in denying Perlman's claim for benefits.

Compl. ¶ 73.  Under ERISA § 413, a plaintiff must file an action for breach of fiduciary duty

within:

> the earlier of (1) six years after (A) the date of the last action which constituted a
> part of the breach or violation, or (B) in the case of an omission the latest date on
> which the fiduciary could have cured the breach or violation, or (2) three years after
> the earliest date on which the plaintiff had actual knowledge of the breach or
> violation.

29 U.S.C. § 1113.

The Complaint alleges that Perlman's employee position at GE Healthcare was

eliminated in 2003 and that she was rehired later that year as a contractor.  Compl. ¶ 33.  Even

assuming *arguendo* that Perlman nonetheless continued to qualify as an "employee" in 2004—a

conclusory assertion, and a dubious one in light of the Complaint's contrary allegations—she

acknowledges leaving the company permanently at some point that year.  That fact is decisive

here.  The Complaint alleges that plan fiduciaries breached their duties when they failed to

inform Perlman of her right to benefits upon her termination as an employee.  Perlman Decl.

¶¶ 15–16 ("At no time . . . were my severance, treatment of options and pension . . . mentioned,

let alone discussed.  I certainly would have aggressively pursued this with HR in the US, on my

return to the US. . . . I never received any communication from United States Human Resources

regarding my entitlement to [b]enefits.").  That alleged lapse, by definition, occurred in 2003, or,

at the latest, during Perlman's work for the company in 2004.  The Complaint does not plead a

coherent theory under which U.S. human resources's failure to follow up with Perlman about

"next steps" regarding severance, pension benefits, and other entitlements occurred deep into

Perlman's post-GE tenure, let alone more than a decade later, as would be necessary to salvage

this claim as timely under § 1113.  *See Carey*, 201 F.3d at 47 ("Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses.").  Because any claim for breach of fiduciary duty must have been brought "six years after . . . the date of the last action which constituted a part of the breach or violation," the statute of limitations barred Perlman's claim as of 2009, and, in all events, long before 2022.

### 3.       Common Law Claims (Counts Four through Eight)

Counts Four through Eight bring claims under New York common law for, in sequence, breach of fiduciary duty, *quantum meruit*, breach of the covenant of good faith and fair dealing, promissory estoppel, and negligent misrepresentation.  Compl. ¶¶ 62–99.  Count Nine, in turn, claims fraudulent concealment, so as to toll the running of the statute of limitations for each of the common law claims.  *Id.* ¶ 102.

Under New York law, the limitations period for each these claims is six years or fewer. *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 262 (S.D.N.Y. 2008) (six-year period for claim of breach of fiduciary duty where plaintiff seeks equitable relief and three years where plaintiff seeks only money damages); *Tarquino v. Muse Enters., Inc.*, No. 19 Civ. 3434 (AT), 2020 WL 3871512, at *4 (S.D.N.Y. July 9, 2020) ("Under New York law, a *quantum meruit* claim is subject to a six-year statute of limitations."); *Callahan v. Credit Suisse (USA), Inc.*, No. 10 Civ. 4599 (BSJ), 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) (six-year limitations period for breach of implied covenant of good faith and fair dealing); *Aleem v. Experience Hendrix, L.L.C.*, 413 F. Supp. 3d 251, 258 (S.D.N.Y. 2019) (six-year limitations period for promissory estoppel); *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) ("In New

York, a negligent misrepresentation claim that is based on the same factual situation as a fraud claim is subject to a six-year statute of limitations.").

As to the Complaint's common law claims of breach of fiduciary duty, *quantum meruit*, and breach of the covenant of good faith and fair dealing, these all turn on alleged violations of Perlman's "employment agreement" and her employers' failure to convey to her stock options or equivalent value. Compl. ¶¶ 76, 82, 89.  On this theory, Perlman had been entitled to equity options and other compensation under her employment agreement, entitlements of which she necessarily knew in 2003.  Her alleged communications with Sir William Castell similarly indicate Perlman's real-time awareness of the equity options to which she claims a contractual entitlement.  *Id.* ¶ 49.  In these circumstances, Perlman had until 2006 to bring claims of breach of fiduciary duty and until 2009 to bring claims of *quantum meruit* and breach of the covenant of good faith and fair dealing.  Each such claim was thus brought long after the applicable limitations period expired.

As to the Complaint's claim of promissory estoppel, it is based on representations made in the employment agreement and Perlman's communications with Castell in 2001 and 2002.  It thus is untimely, because, per the Complaint, Perlman would have been aware of her claim as to stock options and other promised compensation by 2003, when her employment was terminated, meaning the limitations period had run by 2009.

Finally, as to the negligent misrepresentation claim, it, too, is untimely, because any misrepresentation concerning Perlman's benefits or compensation necessarily occurred in or before 2003, when her position was eliminated.  The limitations period for this claim thus ran by 2009.

The common-law claims thus—barring a viable theory of tolling—are all untimely.

12

### B.    Equitable Tolling and ERISA's Statutory Discovery Rule

The Complaint alleges that—even if otherwise time-barred—its ERISA and common law claims are timely, because the statute of limitations period was equitably tolled (as to the common law counts) or reset (under ERISA's similar statutory discovery rule) by defendants' attempts to defraud Perlman or conceal her causes of action. Compl. ¶ 102; *see also* Opp. at 18.

"Equitable tolling is 'an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.'" *Danecker v. Bd. of Trustees of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 612 (S.D.N.Y. 2012) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)). Applicable to the common law counts here, equitable tolling allows courts "to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," but "requires a party to pass with reasonable diligence through the period it seeks to have tolled." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). "[T]he burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). "To plead equitable tolling based on fraudulent concealment, a complaint must plead "*with particularity* (1) wrongful concealment by the defendant; (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period; and (3) due diligence in pursuing discovery of the claim." *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 59 (S.D.N.Y. 2012) (emphasis in original); *see also N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013).

ERISA contains a statutory discovery rule that functions similarly. It affords plaintiffs who bring suits for breach of fiduciary duty additional time to initiate claims when they can show the defendant committed fraud or concealment. 29 U.S.C. § 1113. It provides that the

ERISA statute of limitations shall not apply "in the case of fraud or concealment, [where] such action may be commenced not later than six years after the date of discovery of such breach or violation." *Id.*  To secure such relief, an ERISA complaint must plausibly plead that a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001)).  Although this provision does not formally "toll the otherwise applicable six-or three-year statute of limitations established in § 413(1) or (2)" so much as "it prescribes a separate statute of limitations of six years from the date of discovery," *Caputo*, 267 F.3d at 189 (internal quotation marks omitted), in substance, the ERISA discovery rule, with its focus on whether knowing misrepresentations or omissions hindered the plaintiff from discovering the breach, effectively replicates the standard, above, for equitable tolling of the common law claims here.

In claiming that ERISA's discovery rule applies here, Perlman likens this case to *Osberg v. Foot Locker, Inc.*, 862 F.3d 198 (2d Cir. 2017).  The Second Circuit there rejected a statute of limitations defense, finding that § 1113 permitted otherwise untimely claims to survive.  The Circuit based that ruling on employer Foot Locker's misstatements to employees as to the value of employees' pension benefits under ERISA and its erroneous suggestion that the value of their benefits would increase with continued employment.  Foot Locker, the Circuit noted, had failed to disclose the erosion of pension benefits' value and had "*made misstatements* to participants that suggested that the value of their benefits was fully reflected in their account balances and would increase in value." *Osberg*, 862 F.3d at 211 (emphasis added).  The Court held that such "'affirmative misrepresentations of a material fact are self-concealing acts' and 'hinder[ed] the

14

discovery of [the company's] breach of fiduciary duty.'" *Id.* In so finding, the Circuit relied on

its decision in *Caputo v. Pfizer, Inc.*, which had held that treating ERISA's six-year limitations

period as running from a fraud's discovery was warranted under § 1113 where "a fiduciary: (1)

breached its duty by making a knowing misrepresentation or omission of a material fact to

induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the

discovery of a breach of fiduciary duty." 267 F.3d at 190. The Circuit in *Osberg* added:

> [A]pplication of the concealment exception requires that "in addition to alleging a
> breach of fiduciary duty (be it fraud or any other act or omission), the
> plaintiff . . . also allege that the defendant committed either: (1) a 'self-concealing
> act'—an act committed during the course of the breach that has the effect of
> concealing the breach from the plaintiff; or (2) 'active concealment'—an act
> distinct from and subsequent to the breach intended to conceal it."

862 F.3d at 210–11 (quoting *Caputo*, 267 F.3d at 189).

Critically, in finding the statutory concealment exception met, *Osberg* and *Caputo* relied

upon the ERISA plaintiff's showing that the employer had made affirmative misrepresentations

that induced the plaintiff to act to his or her imminent detriment. In *Osberg*, where the issue

arose in a bench trial, the factual record showed that Foot Locker had misleadingly suggested to

employees that the value of their benefit was fully reflected in their account balances and would

increase in value with their term of employment. And in *Caputo*, which arose on a motion for

summary judgment, there was sufficient evidence to establish that Pfizer's management had

instituted a policy under which supervisors knowingly misled employees at a downsizing

manufacturing facility as to whether there would be a "golden handshake" early-retirement

program offered to workers who quit sooner.

Perlman's Complaint does not plausibly allege anything of the sort. It does not allege an

affirmative misstatement or act that concealed the employer's breach of ERISA, or a later act

designed to conceal that breach. Still less does the Complaint do so in conformity with Federal

Rule of Civil Procedure 9(b) ("Rule 9(b)"), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," and which applies to attempts to trigger § 1113 by means of fraudulent concealment as well as to common law claims of equitable tolling based on fraudulent concealment. *See, e.g.*, *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) (affirming district court's dismissal of ERISA and common law claims, noting that Rule 9(b) "requires that all fraud claims be pleaded with particularity"); *Conn. Gen. Life Ins. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671, 684 (D. Conn. 2021) (applying Rule 9(b) heightened pleading standard to ERISA claim and unjust enrichment claim under state law).  Under Rule 9(b), the party claiming fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Elevation Health, LLC v. Wong*, No. 22 Civ. 10308 (PAE), 2023 WL 3842256, at *3 (S.D.N.Y. June 6, 2023.  Although the rule permits "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.'" *Acito v. IMCERA Grp.*, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). And as to scienter, although it "need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Wexner*, 902 F.2d at 172 (internal quotations omitted).

Perlman's Complaint—even treating her supporting declarations as incorporated—recites only rote conclusions regarding affirmative misstatements or knowing dissembling or misleading by defendants.  It alleges only generally that representatives of the pension plan failed to send

16

documents that they had promised to send Perlman, and that Perlman's follow-up call revealed that the Plan was struggling to address an "anomaly" in Perlman's file pertaining to periods she alleges she worked for the company. Compl. ¶ 58.

Without more, these alleged lapses do not give rise to a "strong inference of fraudulent intent" on defendants' part. *Wexner*, 902 F.2d at 172. Fairly characterized, the Complaint alleges nothing more than a party's inability to locate records pertaining to Perlman's employment, which had ended 17 years earlier. Its allegation that the failure to produce such records was intentional—to wit, "[d]efendants' concealment of material information regarding [Perlman's] entitlement to benefits under The Plan, her Stock Compensation[,] and other compensation was done with the intent to mislead [Perlman] and other similarly situated employees," Compl. ¶ 102—is totally conclusory. The Complaint does not allege facts supporting that the defendants even still maintained such records, let alone that their non-production of them to Perlman was intended to mislead, defraud, or obfuscate. And the Complaint does not allege any other form of false or misleading statement that inhibited Perlman from researching, applying for, or otherwise pursuing pension benefits to which she may have been entitled around the time of the elimination of her employee position in 2003, or in the years immediately thereafter. *See Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 411 (S.D.N.Y. 2009).

The Complaint's remaining sparse allegations, whether analyzed as a matter of equitable tolling or under § 1113, likewise do not come close to alleging fraud or concealment so as to earn Perlman's claims the decade-plus toll or time extension they require. That the human resources department should have retained records, Compl. ¶ 59, arranged an informational meeting with Perlman upon the elimination of her job, *id.* ¶ 33, or otherwise made itself more

17

available to her, *id.* ¶¶ 55–57, are lapses that, without more, do not sound in fraud or knowing concealment. *See, e.g., Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Lee*, No. 15 Civ. 8081 (KBF), 2016 WL 1064616, at *12 (S.D.N.Y. Mar. 14, 2016) (plaintiffs failed to meet specificity standard of Rule 9(b) where they failed to "give the location and approximate date and time on which any particular fraudulent statements were made. The allegations also fail to provide the form of such statements—whether they were communicated in writing, orally, or otherwise."); *cf. Kayser v. Guardian Life Ins. Co. of Am.*, No. 19 Civ. 454 (NSR), 2021 WL 2827042, at *4 (S.D.N.Y. July 7, 2021) ("[T]here [was] a genuine dispute of material fact as to whether [d]efendant breached its fiduciary duty . . . by withholding material information and providing incorrect information to [p]laintiff.").

The Complaint is further wanting in failing to allege reasonable diligence by Perlman during the lengthy period for which she seeks equitable tolling or relief under § 1113. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (litigant pursuing equitable tolling bears the burden of establishing "that he has been pursuing his rights diligently, and [] that some extraordinary circumstance stood in his way"); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (equitable tolling is not to be applied liberally, but only "when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances"). The Complaint does not allege that, in the years that followed the termination of her employment and her being told there would be a meeting with her about "next steps," Perlman took any follow-up action, including to explore, research, preserve, or pursue her ostensible pension benefits. Perlman's inaction for well more than a decade is the antithesis of reasonable diligence. Her failure to plead such diligence precludes her tolling bid. *See, e.g., Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (equitable tolling unavailable

where plaintiff delayed months in filing claims for administrative and judicial monetary

remedies); *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (an

independent Department of Labor review of plaintiff's claim for overtime pay under Fair Labor

Standards Act did not "prevent[] her from filing her claim on time") (cleaned up); *see also Wang*

*v. Palmisano*, 157 F. Supp. 3d 306, 322–23 (S.D.N.Y. 2016) (tolling denied where plaintiff

brought untimely suit after he was notified that his initial suit was filed in the wrong court); *Viti*

*v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 232 (S.D.N.Y. 2011) (tolling denied in

ERISA suit where plaintiff waited beyond limitations period before contesting in court private

insurer's determination that he did not qualify for disability benefits while he was concurrently

pursuing rights by, for example, applying for Social Security benefits at the Social Security

Administration).

For the foregoing reasons, the Court finds Perlman's ERISA claims in Counts Two and

Three, and her common law claims in Counts Four through Eight, untimely.[6]

Relatedly, the Court dismisses Count Nine, which does not allege a freestanding ground

for relief, but merely alleges that fraudulent concealment applies to the common law claims.

### C.     ERISA Claim for Failure to Provide Documents (Count One)

The Court, finally, turns to Count One, which alleges that defendants violated ERISA

§ 104(b)(4), 29 U.S.C. § 1024, by failing to furnish Perlman with benefits documents.  That

section governs the duties of benefits plan administrators to furnish beneficiaries with plan

documents upon request.  It provides that "[t]he administrator shall, upon written request of any

---

[6] Perlman's common law claims for benefits owed under the employee pension plan, even if
timely brought, would separately require dismissal under ERISA's preemption clause. 29 U.S.C.
§ 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter
and subchapter III shall supersede any and all State laws insofar as they may now or hereafter
relate to any employee benefit plan described in section 1003(a) of this title.").

participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024. An administrator who fails to mail the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may be personally liable to the participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal. The duty to furnish such materials under ERISA "does not arise, however, unless and until a participant makes a *written request* for such information." *Gilbert v. Related Mgmt. Co., L.P.*, No. 95 Civ. 9610 (JFK), 1998 WL 99801 (JFK), at *8 (S.D.N.Y. Mar. 4, 1998) (emphasis in original) (internal citations omitted), *aff'd sub nom. Gilbert v. Related Mgmt. Co.*, 162 F.3d 1147 (2d Cir. 1998); *see also Aquilio v. Police Benev. Ass'n of N.Y. State Troopers, Inc.*, 857 F. Supp. 190, 213 (N.D.N.Y. 1994) ("Insofar as plaintiff's second cause of action can be read as claiming that the PBA is liable for failure to provide certain information . . . the court agrees with the PBA that plaintiff's failure to make the requisite written demand under 29 U.S.C. § 1024(b)(4) bars this cause of action.").

The statutory requirement of a written request is decisive here. Even if liberally construed, the Complaint and Perlman's supporting declarations do not contain any allegation that Perlman ever made a written request for plan documents. The Complaint instead states that "[t]hose documents have yet to be provided despite [p]laintiff's request for these documents during her initial telephone with [GE Healthcare] on June 20, 2020." Compl. ¶ 65. But it does not anywhere describe the mechanism of Perlman's request, let alone allege that she sent a physical letter, or even an email, to the plan administrators requesting these materials. Perlman's sworn statement does not cure this problem. There, Perlman attests that she spoke *on the phone*

three times with plan administrators,[7] and that "I and others on my behalf, have on several

occasions since March 2020, when I became aware for the first time that I might be entitled . . .

requested a copy of my personnel file from [d]efendants." Perlman Decl. ¶ 14.  Nowhere,

however, is this request alleged to have been in writing.  And Perlman has not cited authority

finding liability based on a failure of a plan administrator to furnish a participant with plan

documents based an oral or telephonic request.  Count One, therefore, must be dismissed for

failure to state a claim. *See Gilbert*, 1998 WL 99801, at *8 (Plaintiff's claim for failure to

provide information against benefits plan dismissed because "duty to disclose under ERISA does

not arise, however, unless and until a participant makes a written request for such information."

(emphasis omitted)).

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion to dismiss plaintiff's

lawsuit in its entirety.  Although the underlying facts may prove not to permit a viable

amendment, the dismissal is without prejudice to Perlman's right to move to file an amended

complaint. *See Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273,

276 (2d Cir. 1998) ("Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) are

typically given an opportunity to amend their complaint."); *Luce v. Edelstein*, 802 F.2d 49, 57

(2d Cir. 1986) ("Because plaintiffs must be allowed an opportunity to amend to remedy

deficiencies under Rule 9(b), we believe they may also amend the complaint in light of our

discussion of sufficiency under Rule 12(b)(6).").  Absent a timely motion for an extension of the

---

[7] Perlman's submissions are less than pellucid on the timing of her telephonic outreach.  In one section, the Complaint alleges that Perlman's first telephone call with the plan occurred on June 19, 2020, Compl. ¶ 58; in another, it states that the initial phone call occurred on June 20, 2020, *id.* ¶ 60.

time in which to do so, any such amended complaint is due two weeks from this decision; otherwise, the Court will then close this case, with prejudice to the filing of an amended complaint.

The Clerk of Court is respectfully directed to terminate all pending motions.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: June 30, 2023
      New York, New York