UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAROL PERLMAN, | | |
| | Plaintiff, | 22 Civ. 9823 (PAE) |
| -v- | | <u>OPINION & ORDER</u> |
| GENERAL ELECTRIC, *et al.*, | | |
| | Defendants. | |

PAUL A. ENGELMAYER, District Judge:

In this action, plaintiff Carol Perlman alleges her former employer, General Electric

("GE"), violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1001 *et seq.*, as well as New York state common law, by failing to provide her with

documentation related to its pension plan (the "Plan") and wrongfully denying her claims for

benefits under the Plan.  She brings claims against GE, its GE Healthcare subsidiary, and

individual managers within GE (together, "defendants").

In an earlier decision, the Court granted defendants' motion to dismiss Perlman's initial

Complaint under Federal Rule of Civil Procedure 12(b)(6), while also granting Perlman leave to

amend.  Dkt. 35; *Perlman v. Gen. Elec.*, No. 22 Civ. 9823 (PAE), 2023 WL 4304929 (S.D.N.Y.

June 30, 2023), *appeal withdrawn*, No. 23-1099, 2023 WL 9380714 (2d Cir. Sept. 21, 2023)

["*Perlman I*"].  Perlman duly filed an amended complaint (the "First Amended Complaint" or

"FAC"), Dkt. 39, which defendants now move to dismiss, again under Rule 12(b)(6), Dkt. 40.

For the reasons that follow, the Court grants defendants' motion and dismisses the FAC with

prejudice.

## I.     Background

### A.     Factual Background[1]

The Court assumes familiarity with the factual background of this case, including as set

out in the decision granting defendants' first motion to dismiss. *See Perlman I*, 2023 WL

4304929, at *2–3. The following brief summary incorporates the facts added by the FAC.

#### 1.     Perlman's Employment History

From 1994 to 2003, Perlman worked as vice president of corporate communications for a

series of medical imaging companies that underwent sequential mergers and buyouts. FAC at 6–

9.[2] During this period, she was a U.S. employee with significant employment duties in the U.K.

*Id.* The last of these employers, Amersham Health, Inc. ("Amersham"), was acquired by GE in a

deal announced in 2003, and folded into GE Healthcare. *Id.* at 8–10.

#### 2.     Perlman's Termination

When GE Healthcare subsumed Amersham, Perlman's position was eliminated, although

she was immediately rehired as an independent contractor (in which capacity she worked until

2004). *Id.* at 9–10. Perlman alleges that, under GE Healthcare's redundancy and severance

programs, she should have been advised, but was not, as to the status of her entitlements under

---

[1] The Court draws the facts in this decision from the FAC, Dkt. 39, and the exhibits incorporated
therein. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a
motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint.").

For the purpose of resolving defendants' motion to dismiss under Rule 12(b)(6), the Court
accepts all factual allegations in the FAC as true and draws all reasonable inferences in
Perlman's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Because of internally inconsistent paragraph numbering in the FAC (which goes from
paragraphs 1 to 46, and then starts anew at paragraph 34), the Court cites to the FAC's Bates-
stamped page numbers.

her pension, benefits, stock plans, and other compensation pursuant to GE Healthcare's extant policies and procedures. *Id.* at 10.

Perlman learned of her termination in a 2003 meeting in the United Kingdom with Caroline Luscombe, GE Healthcare's then–executive vice president of human resources. *Id.* at 12–13; *see also id.*, Ex. D ("Luscombe Decl."). Luscombe told Perlman that "U.S. Human Resources" would discuss "next steps" with her "on her return to the United States." FAC at 22. As a result, there was no discussion at this meeting about Perlman's U.S. benefits. And U.S. Human Resources never advised Perlman as to her entitlement to benefits, despite a GE policy to conduct an exit interview with all employees. *See id.* at 16–17. Perlman alleges that GE "withheld from [her] an exit interview or even a discussion of benefits[] because [it] affirmatively and falsely flagged [her] as having voluntarily resigned instead of being made redundant in 2003." *Id.* at 17.

### 3. Perlman's Recent Efforts to Retrieve Her Personnel File and Receive a Pension

In March 2020, Perlman spoke by phone with Maureen Roberts, a former GE Healthcare colleague, who told her that she might be entitled to a pension from GE Healthcare based on her employment between 1994 and 2003. FAC at 18–19; *see also id.*, Ex. 16 ("Roberts Decl."). That call first alerted Perlman that it was possible she was entitled to a GE pension. FAC at 19.

On June 19, 2020, Perlman phoned the GE Healthcare Affiliate Plan in the U.S., and spoke to an administrator, "Bridget." *Id.* Bridget told Perlman that she was entitled to a pension and would "mail her information to fill out in order to withdraw her pension." *Id.* Perlman never received such a mailing. *Id.*

In or about mid-July 2020, Perlman again phoned the GE Healthcare Affiliate Plan, and spoke to an administrator, "David." *Id.* at 19–20. David told Perlman that he was "very well

aware of [her] case" and that she had a three-year vesting pension plan. *Id.* at 20. David further told Perlman that she was entitled to a pension "if she could prove she had been an employee in good standing with [GE] and send him pay stubs as certain months appeared to be missing from [GE's] records." *Id.*

In or about late July or early August 2020, Perlman again phoned GE to arrange to pass along the missing pay stubs. *Id.* This time, David informed her he had made a "mistake" when he had told her that she had a three-year vesting pension; instead, he explained, she had a five-year vesting pension, under which "she was not entitled to pension benefits" unless she had a "special arrangement." *Id.* David stated that he "did not know whether or not [Perlman] had this special arrangement," and that "the only way to know whether [she] was entitled to this special arrangement would be to look at [her] personnel file." *Id.* Perlman then "requested that a copy of her personnel file be retrieved and sent to her." *Id.*

In June 2021, Luscombe, Perlman's former U.K.-based GE colleague, emailed two staff members in GE's Human Resources office asking that Perlman's personnel file be sent to her. *Id.* at 17–18; *see also id.*, Ex. 4 at 1–2 (copy of email). Despite Perlman's requests, and Luscombe's request on her behalf, Perlman never received a copy of her personnel file from the plan or GE Healthcare. FAC at 20.

### 4.    This Lawsuit

In this lawsuit, Perlman brings claims under ERISA and New York common law. These allege that Perlman is entitled to the value of equity options "award[ed]" to her as documented in correspondence in 2001 and 2002 with Sir William Castell, the chief executive of Nycomed Amersham. *Id.* at 15. She alleges that, based on the 2001 correspondence, she is owed 23,852 shares at a strike price of £5.60 per share, totaling £133,571.20; and that, based on the 2002

correspondence, she is owed 18,556 shares at a strike price of £7.15 per share, totaling £266,246.60. *Id.* at 15–16. She also alleges that GE failed to provide copies of documents concerning the Plan (specifically, her personnel file), despite GE's obligation to do so under ERISA. *Id.* at 24–25.

Perlman alleges that her claims—even though arising for the most part from events some 20 years ago—are timely because the statute of limitations has been tolled by defendants' "negligent misrepresentation" and "fraudulent concealment." *Id.* at 29–30. This misconduct included, she alleges, "active measures to ensure that [Perlman] would not know of her entitlement to" benefits under the Plan. *Id.* at 30. Perlman alleges that the "concealment of material information regarding her entitlement to benefits . . . was done with the intent to mislead [Perlman] and other similarly situated employees." *Id.* at 31.

### B.    Procedural Background

On November 17, 2022, Perlman filed the original Complaint, which contained nine counts. Dkt. 1 ("Compl."). Count One sought relief under ERISA, 29 U.S.C. § 104(b)(4), for GE's alleged failure to provide Perlman with benefits documents. *Id.* ¶¶ 62–68. The remaining counts challenged the denial of benefits: Counts Two and Three brought claims under ERISA for, respectively, benefits, 29 U.S.C. § 502(a)(1)(B), and breach of fiduciary duty, *id.* §§ 404(a)(1)(A), (D), 409(a), and 502(a)(2); Counts Four through Nine brought common law claims, for, respectively, breach of fiduciary duty; quantum meruit and unjust enrichment; breach of the covenant of good faith and fair dealing; promissory estoppel; negligent misrepresentation; and fraudulent concealment. Compl. ¶¶ 69–103.

On June 30, 2023, the Court granted defendants' motion to dismiss without prejudice, while granting Perlman leave to amend. Dkt. 35. As to Counts Two through Nine, which sought

5

relief based on the denial of benefits, the Court found these untimely, that Perlman's deadline to file the ERISA claims had not been re-set by ERISA's discovery rule, 29 U.S.C. § 1113, and that her common law claims were not subject to equitable tolling. *Perlman I*, 2023 WL 4304929, at *4–10. As to Count One, which challenged GE's alleged failure to provide her with benefits documents, the Court found that Perlman had failed to plead, as ERISA required, that she had ever made a written request for such documents. *Id.* at *10.

On August 14, 2023, Perlman filed an amended complaint with the same nine counts as in the original Complaint. Dkt. 39 ("First Amended Complaint" or "FAC").[3]  The FAC added new factual allegations, primarily as to Perlman's later efforts (from 2020 onwards) to retrieve documents from the Plan and to receive a pension. *See id.* at 9–10, 16–18.

On September 11, 2023, defendants moved to dismiss the FAC, Dkt. 40, and filed a memorandum of law in support, Dkt. 41 ("Def. Br."). On November 17, 2023, Perlman filed a memorandum of law in opposition to the motion. Dkt. 57 ("Pl. Br."). On December 7, 2023, defendants filed a reply. Dkt. 59 ("Def. Reply Br.").

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where

---

[3] On July 28, 2023, Perlman appealed the initial dismissal. Dkt. 38. On September 14, 2023, after Perlman filed an amended complaint, the Court indicated its intent to stay the action pending the disposition of Perlman's appeal. Dkt. 42. On September 20, 2023, Perlman notified the Court that she intended to abandon the appeal. Dkt. 43. On September 21, 2023, the Second Circuit dismissed the appeal; its mandate issued the same day. Dkt. 47.

"the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.   Discussion

### A.      Statute of Limitations (Counts Two through Nine)

Defendants again argue that Perlman's claims challenging the denial of benefits, which in the FAC are Counts Two through Nine, are untimely, and these are not salvaged (1) as to the common law claims, by equitable tolling; (2) as to the ERISA claims, by ERISA's statutory discovery rule, 29 U.S.C. § 1113.  The Court previously found these claims untimely absent equitable or other tolling, and gave Perlman leave to amend to bolster her claim for tolling. *See Perlman I*, 2023 WL 4304929, at *4–5.  The FAC, however, still fails to plead facts that would plausibly entitle Perlman to tolling.[4]  The Court thus again finds these claims untimely.

### 1.      Applicable Legal Principles

"Equitable tolling is 'an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be

---

[4] The Court rejects Perlman's attempts to relitigate the threshold question of when her claims accrued.  The Court held in its prior opinion that these accrued in 2003–2004. *See Perlman I*, 2023 WL 4304929, at *4–6.  As the Court explained, the case law is decisive that a reasonable person is on notice of a claim for misclassification or exclusion at the time of her reclassification as an independent contractor, notwithstanding her claim that she "did not understand" she would not be entitled to benefits. *Id.* at *4 (quoting *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001)).  The FAC does not plead new relevant facts, and Perlman, in attempting to

expected in the circumstances.'" *Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 612 (S.D.N.Y. 2012) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)). Applicable to the common law counts here, equitable tolling allows courts "to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," but "requires a party to pass with reasonable diligence through the period it seeks to have tolled." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). "[T]he burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). To plead equitable tolling based on fraudulent concealment, "a plaintiff [must] plead[] *with particularity* (1) wrongful concealment by the defendant; (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period; and (3) due diligence in pursuing discovery of the claim." *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 59 (S.D.N.Y. 2012) (emphasis in original); *see also N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013).

ERISA contains a statutory discovery rule that functions similarly. It affords plaintiffs who bring suit for breach of fiduciary duty additional time to initiate claims when they can show the defendant committed fraud or concealment. 29 U.S.C. § 1113. It provides that the ERISA statute of limitations shall not apply "in the case of fraud or concealment, [where] such action may be commenced not later than six years after the date of discovery of such breach or

---

reopen that question, does not identify intervening legal authority. *See* Pl. Br. at 16–19. "The mere filing of an Amended Complaint does not entitle [a] [p]laintiff to relitigate his claims absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also, e.g.*, *Perkins v. Perez*, No. 17 Civ. 1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020); *Mateo v. Dawn*, No. 14 Civ. 2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016); *Guttilla v. City of New York*, No. 14 Civ. 156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016).

violation." *Id.* To benefit from application of this rule, an ERISA complaint must plausibly plead that a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001)). Although this provision does not formally "toll the otherwise applicable six-or three-year statute of limitations established in § 413(1) or (2)" so much as "it prescribes a separate statute of limitations of six years from the date of discovery," *Caputo*, 267 F.3d at 189 (internal quotation marks omitted), in substance, the ERISA discovery rule, with its focus on whether knowing misrepresentations or omissions hindered the plaintiff from discovering the breach, effectively replicates the standard, above, for equitable tolling of the common law claims here. *See Perlman I*, 2023 WL 4304929, at *7.

Because Perlman's claim as to equitable tolling relies on defendants' allegedly fraudulent conduct, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies. *See, e.g.*, *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998); *Conn. Gen. Life Ins. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671, 684 (D. Conn. 2021). Under Rule 9(b), the party claiming fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Elevation Health, LLC v. Wong*, No. 22 Civ. 10308 (PAE), 2023 WL 3842256, at *3 (S.D.N.Y. June 6, 2023). Although the rule permits "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory

allegations.'" *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  And as to scienter, although it "need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Wexner*, 902 F.2d at 172 (internal quotations omitted).

### 2.    Application

Perlman's FAC does not offer new factual allegations sufficient to unsettle the Court's prior conclusion that she has not plausibly alleged an entitlement to equitable tolling.  She argues that her FAC "newly alleges" that GE "withheld" from her the "exit interview" required under under "Company policy" and that, "[u]pon information and belief," GE "affirmatively and falsely flagged [her] as having voluntarily resigned instead of being made redundant in 2003 . . . to trigger her forfeiture of benefits." Pl. Br. at 5 (alteration in original) (quoting FAC at 16–17).  Such allegations are sufficient, she contends, "to toll/reset the statute of limitations," as in the ostensibly analogous cases of *Osberg v. Foot Locker, Inc.*, 862 F.3d 198 (2d Cir. 2017), *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001), and *Kayser v. Guardian Life Ins. Co. of Am.*, No. 19 Civ. 454 (NSR), 2021 WL 2827042 (S.D.N.Y. July 7, 2021).  Pl. Br. at 7.  That argument fails.

At the threshold, these allegations are not new, notwithstanding Perlman's contrary claim.  They appeared in Perlman's initial Complaint. *Compare* Compl. ¶¶ 38, 45–46, 54 (alleging Perlman "was recorded as voluntarily leaving the company," which "would basically remove her from all the important contact lists and account for [her] not receiving any communication from [GE]," and that Perlman "was not given an 'exit interview,'" even though such an interview was required under GE policy), *with* FAC at 16–17 (same).  "The mere filing of an Amended Complaint does not entitle [a] [p]laintiff to relitigate his claims absent new

factual allegations." *Weslowski*, 96 F. Supp. 3d at 316.  Under the law of the case doctrine, a

court is "loathe to revisit an earlier decision in the absence of extraordinary circumstances." *N.*

*River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995).  The absence of new

factual allegations "counsels against reconsideration" of the Court's prior ruling. *Weslowski*, 96

F. Supp. 3d at 316; *see also, e.g.*, *Chavez v. Gutwein*, No. 20 Civ. 342 (KMK), 2022 WL

1487781, at *7 (S.D.N.Y. May 11, 2022) (same); *In re Shanda Games Ltd. Sec. Litig.*, No. 18

Civ. 2463 (ALC), 2022 WL 992794, at *3 (S.D.N.Y. Mar. 31, 2022) (same); *Gurvey v. Cowan,*

*Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2015 WL 4460859, at *5 (S.D.N.Y.

July 21, 2015) (same).

  In any event, even were the Court to consider Perlman's allegations anew, the FAC still

fails to plausibly plead an entitlement to equitable tolling.  Perlman primarily argues that GE's

failure to provide her with an exit interview—and concomitant failure to notify her of her

entitlement to benefits—indicates that GE deliberately aimed to conceal from her (or otherwise

mislead her as to) her entitlement to benefits. Pl. Br. at 3–8.  "Without more," however, "these

alleged lapses do not give rise to a 'strong inference of fraudulent intent' on defendants' part."

*Perlman*, 2023 WL 4304929, at *9.  That GE did not actively notify Perlman of her right to a

pension (assuming *arguendo* she had such a right) does not rise to the level of the "affirmative

misrepresentations" or acts of "active concealment" that have been held to warrant equitable

tolling. *Caputo*, 267 F.3d at 190 & n.3.

  The cases Perlman cites are not only inapposite—they highlight by comparision the

deficiencies of the FAC's factual allegations.  In *Osberg*, for instance, the Second Circuit held

tolling appropriate where defendant Foot Locker made "affirmative misrepresentations" to its

plaintiff employees as to the value of their pension benefits under ERISA and thus "hinder[ed]

the discovery of [Foot Locker's] breach of fiduciary duty." *Osberg*, 862 F.3d at 210 (alterations in original) (citation omitted). So, too, in *Caputo*, where defendant Pfizer "ma[de] affirmative material representations" to its plaintiff employees as to whether there would be a "golden handshake" early-retirement program offered to workers who quit sooner. *Caputo*, 267 F.3d at 191–92. Likewise in *Kayser*, an insurer "withh[e]ld[] material information and provid[ed] incorrect information" to the plaintiff employee during the claims process, and thus frustrated her ability to "secure[] her benefits under the Plan." *Kayser*, 2021 WL 2827042, at *4. In each of these cases, the defendant "made affirmative misrepresentations that induced the plaintiff to act to his or her imminent detriment" within the period of the statute of limitations. *Perlman I*, 2023 WL 4304929, at *8.

Here, in contrast, Perlman has not identified any affirmative misrepresentation made to her in the period before or immediately after her termination. At most, her FAC pleads that GE departed from its own standard operating procedure in failing to conduct an exit interview. But she does not cite any authority, and the Court is aware of none, to the effect that the mere violation of a defendant's own voluntary policies is an "extraordinary circumstance" warranting equitable tolling. *Cf. Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (tolling warranted where defendants failed to adhere to "federal regulations requir[ing] [them] to provide [the plaintiff] with notice of his right to file an administrative appeal").[5] To the extent

---

[5] The FAC's allegations "[o]n information and belief" that defendants "falsely flagged [her] as having voluntarily resigned . . . to trigger her forfeiture of benefits" and "deliberately declined to provide [her] with an exit interview . . . to fraudulently conceal" her benefits do not alter this outcome. FAC at 17. "Rule 9(b) pleadings cannot be based upon information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). And even were these allegations well pled, that GE's internal systems contained inaccurate information would not entitle Perlman to equitable tolling; the FAC does not allege that she relied on (or even knew of) these defects until shortly before she filed the FAC. Absent actual reliance during the limitations period, there is no basis for Perlman to argue that she was "induce[d] . . . to act to

that the FAC contains additional factual allegations, these are not sufficient to justify equitable

tolling.

As the Court earlier concluded:

> The Complaint does not allege that, in the years that followed the termination of
> her employment and her being told there would be a meeting with her about "next
> steps," Perlman took any follow-up action, including to explore, research, preserve,
> or pursue her ostensible pension benefits. Perlman's inaction for well more than a
> decade is the antithesis of reasonable diligence. Her failure to plead such diligence
> precludes her tolling bid.

*Id.* at *9. The FAC does not offer any basis for the Court to revisit this conclusion. The FAC

does not allege that Perlman ever sought additional guidance from GE (or from any defendant) in

the "period [she] seeks to have tolled." *Johnson*, 86 F.3d at 12. It thus fails to plausibly plead

that Perlman passed through that period "with reasonable diligence." *Id.* On the contrary, her

"inaction for well more than a decade is the antithesis of reasonable diligence." *Perlman I*, 2023

WL 4304929, at *9. Without reasonable diligence, she cannot plausibly claim equitable tolling.

For the foregoing reasons, the Court finds the ERISA claims in Counts Two and Three,

and the common law claims in Counts Four through Eight, untimely. The Court relatedly

dismisses Count Nine, which does not allege a freestanding ground for relief, but merely alleges

that fraudulent concealment applies to the common law claims.

## B.  ERISA Claim for Failure to Provide Documents

### 1.  Applicable Legal Principles

The only remaining claim, Count One, alleges that defendants violated ERISA

§ 104(b)(4) by failing to furnish Perlman with benefits documents. 29 U.S.C. § 1024(b)(4).

That section governs the duties of benefits plan administrators to furnish beneficiaries with plan

---

[her] detriment" so as to permit equitable tolling. *In re Crude Oil Commodity Futures Litig.*, 913
F. Supp. 2d at 59 (quoting *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012)).

documents upon request.  It provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement . . . or other instruments under which the plan is established or operated." *Id.*  An administrator who fails to mail the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may be personally liable to the participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal.  *Id.* § 1132(c)(1); 29 C.F.R. § 2575.502c-1.

The duty to furnish such materials under ERISA "does not arise, however, unless and until a participant makes a *written* request for such information."  *Gilbert v. Related Mgmt. Co., L.P.*, No. 95 Civ. 9610 (JFK), 1998 WL 99801, at *8 (S.D.N.Y. Mar. 4, 1998) (emphasis in original) (internal citations omitted), *aff'd*, 162 F.3d 1147 (2d Cir. 1998); *see also Aquilio*, 857 F. Supp. at 213 ("Insofar as plaintiff's second cause of action can be read as claiming that the PBA is liable for failure to provide certain information . . . the court agrees with the PBA that plaintiff's failure to make the requisite written demand under 29 U.S.C. § 1024(b)(4) bars this cause of action.").

### 2.    Application

In its earlier decision, the Court dismissed this claim because the Complaint did not allege "that Perlman ever made a written request for plan documents."  *Perlman I*, 2023 WL 4304929, at *10.  In the FAC, Perlman now alleges that Luscombe, her former colleague, sent multiple written requests to GE on Perlman's behalf "to request [her] personnel file to determine [her] pension eligibility, but no such documentation was ever provided."  FAC at 20.

Even with this added allegation, the FAC fails to state a claim, for two reasons.

First, the FAC still fails to allege that *Perlman* made a written request for plan information. All it alleges is that a *third party* (Luscombe) did so on her behalf. The text of the statute requires more. ERISA requires that "[t]he administrator" furnish relevant documents only "upon written request of *any participant or beneficiary*." 29 U.S.C § 1024(b)(4). It does not require the administrator to furnish documents sought by a non-participant and non-beneficiary. The "duty to disclose under ERISA does not arise . . . unless and until *a participant* makes a written request for such information." *Gilbert*, 1998 WL 99801, at *8 (emphasis added); *see also, e.g., Colarusso v. Transcapital Fiscal Sys., Inc.*, 227 F. Supp. 2d 243, 258 (D.N.J. 2002) (no breach because plaintiff failed to "make a written request"); *Aquilio v. Police Benevolent Ass'n of the N.Y.S. Troopers*, 857 F.Supp. 190, 213 (N.D.N.Y. 1994) (same). The statute would not make it unlawful for GE to refuse to "discuss important and confidential benefit information with someone" who claimed "actual authority to act on [Perlman's] behalf" but had no evidence of a relationship entitling her to do so. *Keys v. Eastman Kodak Co.*, 739 F. Supp. 135, 138–39 & n.2 (W.D.N.Y.), *aff'd*, 923 F.2d 844 (2d Cir. 1990). GE likewise was not obliged to relinquish Perlman's documents to such a person.

Second, even had the request been made in writing by Perlman, the material the FAC alleges were sought—Perlman's personnel file—is not covered by § 104(b)(4). The only provision in § 104(b)(4) that could potentially cover that file is the statutory catch-all for "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). But under the canon of *ejusdem generis*, "the statute's enumeration of the specific terms 'summary plan description,' 'plan description,' 'bargaining agreement,' and 'contract'" indicates that "other instruments" is "properly limited to those class of documents which provide a plan participant with information concerning how the plan is *operated*," rather than all those documents in its

possession or related to a participant's employment. *Allinder v. Inter-City Prod. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998) (emphasis in original). As the Second Circuit has held, "Congress did not mean the clause 'instruments under which the plan is . . . operated' to encompass all of the plan's papers, documents, recorded information, or reports." *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir. 1997). A personnel file—which presumably contains all manner of information as to Perlman's past employment with GE, the vast majority of which would likely be irrelevant to the operation of the Plan—is not an instrument "under which the plan is established or operated." *Cf., e.g., Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995) (finding that a personnel file would "contain documents not covered by § 1024(b)(4)" and thus the defendant lacked "clear notice of which documents [were] sought"); *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 10 Civ. 653 (JCC), 2010 WL 3521760, at *6 (E.D. Va. Sept. 7, 2010) (finding that "a blanket request for an entire personnel file does not put the recipient on notice" of what documents were sought sufficient to establish a claim under § 104(b)(4)). As such, what the FAC pleads as sought fell outside § 104(b)(4). The request, even if by Perlman and in writing, thus did not trigger a duty to respond by defendants.

The Court thus finds that Perlman's ERISA § 104(b)(4) claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss. Perlman's FAC is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment in favor of defendants, to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 16, 2024
New York, New York